Number 221066, Dora Bonner v. Triple-S Vida, Inc. et al. At this time, would Attorney Santiago-Vasquez please introduce herself on the record to begin? Good morning, Your Honors. Monica Santiago-Vasquez, on behalf of Appellant Dora Bonner, who is here with me and is sharing a portion of the argument. We reserve two minutes for rebuttal. Two minutes for rebuttal? That's fine. Thank you. May I please, the Court? The appropriate remedy in this case is to reverse the decision of the District Court to grant the motion for summary judgment, which will be argued by Attorney Bonner, but also to remand for additional pretrial discovery. With respect to the pretrial discovery, we understand that the standard of review is abuse of discretion. However, this Court is called to intervene when the lower court's decision results in manifest injustice. This case began with this very own court's Judge Hoppe's decision dismissing Appellee's motion to dismiss. And he established that in her amended complaint, Bonner established a plausible set of facts that show a more than plausible scenario that would be, could be confirmed by evidence coming from discovery. Thus, the need for discovery was clearly established early in the case. The discovery in this case began at the height of the pandemic, which, among other reasons, resulted in both parties filing two joint requests for the extension of the discovery deadline. The Court was aware that multiple depositions were to be taken. In the meantime, Bonner presented her first discovery request. And after agreeing to one extension, she received an answer to her request that was not only 10 days late after the agreed deadline, but it didn't offer a single document or piece of relevant information, did not have an evidentiary log, and was a blanket objection with no foundation. And also, the instructions were not following identifying individuals that answered the request. Under Federal Rule of Civil Procedure 34B in Marks v. Kelly, Hart, and Hallman, Appellees were obliged to answer the discovery request within 30 days. The rule also establishes the sanction for not doing so, which is to waive the objections that they may have would be waived. Forced to seek, Bonner was forced to file a motion to compel, and diligently requested an additional 90 days for discovery after the decision of the lower court for the motion to compel. In its opposition to the motion to compel, Appellees did not offer any reason to explain why their response was late. They did also eventually join Bonner's request with their own motion to extend the discovery deadline for another 90 days after the decision on the motion to compel. The district court did not address a single one of Appellee's violation in responding to the discovery request, and in their decision to deny the motion to compel, or in their decision denying the motion for reconsideration. Aren't those issues all within the discretion of the district court? You really have to point to specific errors in terms of the discovery request. We understand, Your Honor, that the procedural history in this case is the one that points to the manifest injustice, and the fact that the way that discovery transpired, and the court ignoring even a joint request from both parties to extend the discovery deadline after the decision on the motion to compel resulted in manifest injustice to Bonner. She was diligent in her pursuit of discovery. Appellants just stonewalled her with the answer that they put forth, and the court's actions and inactions together pretty much assisted in that result. Hold on, the motion to compel was denied? Correct. So there is no additional discovery that would have emanated from the denial of that motion? That is correct. But the issue about additional discovery is that both parties requested 90 days after the decision on the motion to compel. And what happened here is that after the district court made its final decision on the motion to compel, it followed up 30 days after with granting the motion for summary judgment and dismissing the case. Therefore, it did not give the parties, and it also didn't rule on that request coming from both parties. Therefore, it did not give the parties a chance to complete the discovery. A motion to compel, that's like we asked for this, they didn't give it to us. Once we get it, we need more time to do discovery. So if you make the motion to compel and they're not giving you anything else, you don't need the additional time to follow up on the motion to compel because it didn't, there was nothing to follow it. We were asking for additional time after the motion to compel, and it was not addressed nor given to us by dismissing the case 30 days after the decision on the motion to compel. But you shouldn't have needed any time when there was nothing else ordered from the motion to compel. There was nothing to follow the motion to compel. It was denied. I am giving the balance of my time to Attorney Bonner to argue the rest of our argument. Attorney Bonner, if you could wait for the rebuttal time to make your argument. Your first eight minutes have elapsed. Okay. Yeah. Thank you. At this time, will Attorney Trellis Hernandez please introduce herself on the record. Yes. Good morning. May it please the Court. Maria Álvarez Trellis on behalf of Avalese Triple S Management and Triple S Vida, which I'll refer to as Triple S. This is the second time Ms. Bonner has made a claim before the federal courts against Triple S for what she alleges was basically a fraud committed on her by several persons mentioned throughout her complaint. Both times, both in the District Court in Texas and in the District Court below, the case was dismissed basically on the finding that whatever the merits of the substantive allegations, whether Ms. Bonner was defrauded or not, how much money she lost, what damages she suffered, she could not connect that alleged fraud to Triple S. As the District Court in Texas mentioned, the fact is that Ms. Bonner was not in contact with the actual defendant in this case. That is precisely what the court below found on summary judgment. For summary judgment purposes, the defendant focused solely on whether the actions that Ms. Bonner says occurred, that she sent $60,000 in exchange for a $3 million or $4 million certificate, that she was later requested another $60,000 for another $3 million or $4 million certificate. Regardless of whether that occurred and how, the persons that were in contact with Ms. Bonner, requested the money and allegedly defrauded her were not employees of Triple S. Now, the record in summary judgment shows without a doubt that those persons, whether it be Mr. Gamboa Spencer, whether it be Mr. Aponte, whether it be Mr. Serra or anyone else in the cast of characters that's mentioned throughout the case, that those were not employees. Plaintiff assigns error to the court's conclusion in summary judgment based basically on the argument that the court allowed because of lack of personal knowledge or because of compulsory statements and then assigns error to the district court as well, alleging that it engaged in an impermissible comparative analysis of the evidence. I'll start with the second. That's simply not the case and the record shows as much. The district court, although the district court did, was adhered to the rule in Rule 56 and this circuit's case law, stating as a matter of black letter law that for purposes of summary judgment, the party needs to rely on admissible evidence and that means evidence that is authentic and that is not otherwise inadmissible pursuant to the rules of evidence. The evidence that plaintiff purported to show supported her claims was both not authenticated and hearsay because ultimately all of the evidence that plaintiff has relies on her alleged conversations with these persons and their statements made out of court and submitted for the purpose of the truth of what was being said, that they were in fact AAA employees. As opposed to plaintiff, defendants submitted affidavits which complied with Rule 56. A very specific affidavit by the Vice President of Human Resources of AAA who affirmed that she was speaking out of personal knowledge and based on her own review of the records of employees and files of AAA subsidiaries and then went ahead and listed each of the persons that plaintiff asserts were in contact with her and tried to defraud her and said for each of those persons that they were not and had not been employees of AAA at any point. In and of itself, this defeats plaintiff's claims as against AAA. Now, there was one person whose name coincided partially with an actual employee of AAA and that was Ramon Ruiz. Plaintiff alleges throughout her complaint and in the opposition to summary judgment that at some point she was in contact with Ramon Ruiz who she says was the CEO of AAA. In fact, in 2015, the CEO of AAA was Mr. Ramon Ruiz Gomez. Mr. Ramon Ruiz Gomez submitted a sworn statement both in Texas and it was included in this court as well based obviously on personal knowledge that he had never been in contact with Ms. Bonner, that he had never talked to that person, that he had never communicated with her, that he had never sent her an email, that he had never authorized a transfer of $4 million to Ms. Bonner, that the email address that appears in the emails that plaintiff purports to show as evidence of her claims is not his email address and in fact does not coincide with the domain name for AAA. And well, again, in and of itself, clearly within the personal knowledge of the person as it relates to communications that he had or actions that he authorized or didn't authorize. But besides that, as CEO, within his personal knowledge and of course within the realm of his responsibility which also goes to personal knowledge pursuant to case law, Mr. Ruiz Gomez further asserted, first, that it is not in the business, within the scope of business of AAA, to assist individuals with investments, much less investments of $4 or $8 million as are alleged here. That AAA does not bank with Bank of America or Wells Fargo, which are the banks that issue where the transfers were being made supposedly. And that for transfers such as the one at issue in this case, which was for a purported $8 million, AAA would require as a matter of corporate policy that two persons sign the transfer, not just one as is included in the document that the plaintiff submitted. Besides that, and again, just highlighting the other issues that plaintiff has with the evidence, Mr. Ruiz Gomez explained that the signature that appears in that document is not his, again, very much within his personal knowledge. And that, in fact, his custom was to sign with his two last names, as is typical in Puerto Rican, so that he would sign Ruiz Gomez, not Ramon Ruiz. So taken together, the Ojeda Affidavit, which is the Human Resources Vice President Affidavit, and the Ramon Ruiz Gomez Affidavit show that whoever plaintiff may have been in contact, it was not with an employee, officer, or director of AAA, such that the actions alleged cannot be attributed in any way to AAA, and thus there is no viable claim against these entities. Therefore, the summary judgment was correct and should be affirmed. I'll speak very briefly on the motion to compel. That is a matter subject to abuse of discretion. It bears noting that while summary judgment, going back just a second, while summary judgment is normally the NOVA review for issues of admission or exclusion of evidence, which are at issue here, that is also subject to an abuse of discretion review. For the motion to compel, the proper review is abuse of discretion. In this case, the district court carefully weighed the party's decision on the interrogatories and request for production documents, found that the request for production documents and interrogatories sent by the plaintiff were overbroad, harassing, and certainly not proportional to the needs of the case. To give some examples, plaintiff pretended to request that AAA open up all of its employees' files for AAA management and all of its subsidiaries for a period of nine months so that AAA could review all of those files, asked for revenue and tax information for all of the employees for AAA management and all of the subsidiaries, requested for all communications between AAA and its subsidiaries for nine months, all of this without any limitation. Now, AAA properly objected to all of those requests, but did offer an offer to further certify to the extent plaintiff required that no relevant records concerning Bonner existed. What I mean to say is, for example, in communication, AAA said, objected but otherwise said, we can certify that there are no communications  For the employees, AAA had already offered the VP of Human Resources statement asserting that none of the persons Ms. Bonner alleges were in contact with her were in fact AAA employees. So the discovery needed by Ms. Bonner, and which bears mentioning she had from the inception of this case in Texas, was submitted. She had it available.  She did nothing about it, and there was no need for any further discovery. And with that, if the court has no questions, I rely on our briefs. Judge Lopez, do you have anything further? Nothing. Thank you. Thank you. Thank you. At this time, would Attorney Bonner please introduce herself on the record for a rebuttal? Good morning, Your Honors. Good morning. Dora Bonner, appellate. I will start with the issue of the affidavits on a rebuttal. The affidavits themselves, as the record will show, the district court did not analyze those affidavits at all for the purposes of hearsay. The law requires that for an affidavit, it must be based on personal knowledge. It must be facts, not conclusions. It must be the person must be competent to testify concerning the evidence. And in this case, our position is those affidavits were not based on personal knowledge. The case of Hernando Santiago versus Ecolab, in that case, the question was whether or not Ecolab in Puerto Rico or a corporation was a proper defendant. They had their attorney, which is in this case also, to prepare an affidavit that they were not the right party. And the judge found that the affidavit of the attorney for the firm was not based on personal knowledge. And the same thing here. We had the vice president, we had the president, and we had an attorney for Triple S to make the affidavits that were submitted in Texas based on jurisdiction where the court found personal jurisdiction, where the court found that, no, there was no personal jurisdiction, and the case was dismissed and refiled in Puerto Rico. As far as Judge Burroughs' question concerning the motion to compel, the motion to compel was denied with exceptions. The judge denied the motion to compel with prejudice, but required for the motions, the ones in 1, 2, and 3, it was only four interrogatories, and he required us to meet and greet on those 1, 2, and 3, and the request for production for 1 and 11. The meet and greet was done, but no additional evidence, no production at all was come out of that. And in that time period, about a month later, as indicated, the motion for summary judgment came out. There was no hearing before the judge or anything else as to why there was not additional discovery in 1, 2, and 3 of this case. And I know my time is up, but the motion for summary judgment, if I may, just briefly, in the case of Celotex, the motion for discovery, the agreed discovery was that we wanted to take deposition, which included my deposition, and the depositions of two other witnesses. Celotex indicated that where there was witnesses that could be deposed and they were not deposed, then the movement is not entitled to a motion for summary judgment. Thank you. Judge Lopez, do you have anything further? Nothing. Thank you. Thank you, Ms. Bonner. All right. Thank you. Thank you. I believe that concludes argument in this case.